CHARLES N. WILCOX v. HENRY D. YOUNG.

*Sale—Delivery—Payment—Statute of frauds—Requests to charge.*

1. Plaintiff sued to recover the price of goods alleged to have been sold to defendant on a *verbal* contract, the amount to be ascertained by deducting ten per cent. from an inventory made at *cost* by persons agreed upon by the parties. No money was paid, but a portion of the goods were delivered, and the balance held subject to defendant's order, no time for payment being agreed upon. Upon this theory plaintiff recovered a verdict.

     *Held*, that, upon plaintiff's theory, the case was not affected by the statute of frauds, and that the verdict was *conclusive* on the question of the making of the contract of sale, in the absence of errors of law.

2. A request not pertinent to the facts of the case as developed by the testimony on either side is properly refused, as is one assuming a fact as proved which should be left to the jury.

Error to Branch. (Pealer, J.) Argued June 23, 1887. Decided July 7, 1887.

Assumpsit. Defendant brings error. Affirmed. The facts are stated in the opinion.

*F. A. Lyon (John B. Shipman,* of counsel), for appellant.

*Campbell & Newberry* and *William H. Lockerby*, for plaintiff.

SHERWOOD, J.   This case was an action of assumpsit for goods sold and delivered.   It was commenced in justice's court, where the first trial was had, and the plaintiff recovered.   On appeal to the circuit, the cause was again tried with a jury, and verdict and judgment again went for the plaintiff.   Defendant brings error.

The parties to this suit both live in Quincy, in the county of Branch, and in 1884 were each carrying on the undertaking business; their places of business being but a few rods from each other.   The plaintiff desired to sell out his business to the defendant, who was willing to purchase.   From the testimony it would appear that the parties had some conversation upon the subject of plaintiff's selling out to the defendant in 1883, but no treaty was had between them in relation to terms of a sale until some time in the month of March, 1884.   No written contract was ever made, and the plaintiff seeks to recover entirely upon the verbal contract entered into, as he claims, between the parties, for the value of the goods.

That contract, as he states it, is substantially as follows:

"In the spring of 1884, I had a conversation with Mr. Young, the defendant, relative to the undertaking business.   I had several talks with him, at different times, in regard to selling my undertaking stock that I had on hand.   I had run the stock down pretty low, and he said he would buy me out.   *   *   *   He said there was not business enough for us both.   *   *   *   He thought, if I wanted to give up the business, he would buy me out.   My son had taken care of the business, and he was going away, and I could not attend to it.   There was nothing done about it until I sold my hearse, and then I asked him if he wanted to buy what I had left in the undertaking department.   *   *   *   He said he would buy it, and I asked him to come and look it over, and see if we could deal.   I spoke to him two or three times in regard to it, and he did not seem to be ready.   *   *   *   *   *   *   *   *   *   *

"A customer came in with a friend one day. I took them up stairs and showed them what I had. Mr. Young came in, and came up stairs before I came down. He said he had come to see about the stock. * * * I told him I had just taken a job, but that need not make any difference. 'I will turn it over to you if we make a bargain.' He said: 'How much stock have you got?' And I told him that I could not tell as much about it as he could. It was in a pretty small compass, and he could see what there was of it. He said he would look it over, and I showed him, I think, every casket. I showed him the linings and the robes; and the hardware was in a little pile. He said, 'What do you consider this stock worth?' or something to that effect. I said, 'What is it worth to you, Mr. Young?' He said he did not know. * * * He finally made me an offer. He finally said that we would invoice the stock, and discount it at ten per cent. * * * I said: 'I do not care anything about it, and you can take it at that price.' * * * He spoke about the invoice, and said: 'I am busy now, but there may be things here I can use along as I want them. I can take them out, and keep an account of them before we invoice.' He said that wouldn't be long. * * I think he wanted the goods to remain until he got through fixing up. It seems to me he was arranging his coffin department. I said to him that he could if it wouldn't be too long. He went out, and a drayman came right away, and said Mr. Young sent him over for a couple of caskets. They got them down out of the stock, and took them away. * * * * * * * * * * * *

"Mr. Thurber had been in my store, and purchased some of the goods, and I asked him [the defendant] if he had any objection to his helping make the inventory. He said: 'All right.' * * * He said: 'Mr. Thurber knows all about the stock. It is to be inventoried at cost, and you let him go right on with Leroy [plaintiff's son] and make the invoice.' * * * Mr. Thurber went on with the invoice. Mr. Young used some of the goods * * * I held the invoice, and waited. I spoke to Mr. Young a number of times in regard to getting the stock away. * * * I could not get any satisfaction. He would not set any time to come over."

On his cross-examination the plaintiff testified that he sold the goods to the defendant about the eleventh or twelfth of

April; that he sold his hearse the latter part of March; that Mr. Young and Mr. Thurber were to do the invoicing when they could get time; that he did not give Young the invoice; that he did not continue the business after he sold out to defendant, and never sold thereafter any of the stock in question.

The foregoing contains the contract relied upon for recovery. The plaintiff does not claim that any money was paid to him thereon, but that a portion of the goods was delivered, and that he held possession of the rest as directed by the defendant, and subject to his order. Nor does it appear that any particular time was agreed upon for the payment of the goods.

The defendant in his testimony denies that he ever purchased the goods of the plaintiff, and says that he never received any goods of the plaintiff on any such contract. Says that he had some talk with plaintiff about buying the stock, and there was an understanding that an invoice should be taken, and that he could have the goods at 10 per cent. below cost if he desired, and that the goods were represented to him as all right,—that the stock was "new goods, and well bought." Plaintiff sa.d, if the goods were not all right, he would make them right.

Defendant further says in his testimony that he made plaintiff an offer of 90 per cent. of cost for the goods if they were of the quality stated by plaintiff; that he and his son and plaintiff's son made an inventory, and found the goods not as represented, and he declined to take them except upon concessions on the old and damaged goods; that the plaintiff insisted upon the inventory as made up by Thurber, and that defendant never purchased them.

Upon the two theories above indicated the cause was tried at the circuit, and the verdict was against the defendant.

Upon the plaintiff's theory, the case was not affected by

the statute of frauds, and the verdict is conclusive upon the question of whether or not there was a contract of sale, unless some error was made in the rulings of the court.

Five exceptions relate to the rulings of the court upon the admissibility of the testimony; but, under the theory of the plaintiff, we think these rulings were all correct, and he had a right to have the case submitted upon his theory so long as there was testimony tending to support it.

Fourteen requests to charge were presented by counsel for defendant. It is alleged that the court refused to give either or any of these requests, and that exception was taken to each refusal. Error is assigned upon each exception. A careful perusal of the charge of Judge Pealer, however, will discover the fact that all the defendant's requests, in substance, were given, except the last four, which were as follows:

"11. When nothing is said about payment, the law presumes that the sale is to be for cash; and until the money is paid, or the payment waived, the contract is not binding. Wilcox could not demand payment of the purchase price until after the inventory had been made, as the amount of the purchase price had not been ascertained; and, so long as Wilcox could not demand payment, Young could not demand possession of the goods, and the sale would be incomplete.

"12. An acceptance means some act done by the vendee after he has exercise or had the means of exercising, his right of rejection; and if, when Young invoiced the goods, he found that they were not as represented by Wilcox, he had a right to reject them, and Wilcox cannot recover.

"13. The contract comes within the statute of frauds, and is void in law, and Wilcox cannot recover, and your verdict must be for the defendant, Young.

"14. Where something remains to be done to determine the sum to be paid, the presumption is always very strong that title was not to pass."

The eleventh request is not pertinent to the facts of this case as developed by the testimony on either side. The first part of the request states an abstract proposition of law correctly. The

balance of the request assumes that the goods had not been delivered to the defendant, and that delivery of the same could not be made until the purchase price had been fully ascertained, nor could defendant demand possession until the price had been ascertained and paid, or the payment waived. If the jury found as plaintiff claimed, the possession of the goods had already been delivered to the defendant, and payment was awaiting the making and perfecting of the inventory, and to that extent was waived. The possibility of the correctness of the plaintiff's testimony is completely ignored in the request, and for this reason it was properly rejected.

The first part of the twelfth request states a proposition of law in the most general manner possible, and the remainder refers to an invoice of the goods claimed to have been made by Young, but which is denied by the plaintiff. The request assumes the fact that such invoice was made, and did not leave it to be found by the jury. It would have been error to have submitted the request to the jury for that reason.

The thirteenth request also asks the court to intrench upon the province of the jury, and was therefore correctly rejected.

The fourteenth request was not a proper one for the court to give in this case. The circumstances under which the thing alluded to remained to be done (and which had been postponed), to determine the amount the purchaser should pay, should have been contained in the request, to make it proper for the court to comply. And even then, whether the presumption claimed was strong or weak was for the jury, and not for the court, to determine. And the court was not in fault for not charging the request. The charge given was carefully guarded at every point, well considered, and strictly applicable to the facts.

The views herein expressed upon the law of this case will

be found to be fully supported by the authorities cited by the learned counsel in their carefully prepared briefs, and it is therefore unnecessary to reproduce them here.

The judgment at the circuit must be affirmed.

The other Justices concurred.